UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA            )
                                    )
            v.                      )        08 CR 49
                                    )        Judge Norgle
                                    )
HEIDI KUNZ,                         )
                                    )
            Defendant.              )

## MOTION TO QUASH ARREST AND SUPPRESS STATEMENTS

Defendant, HEIDI KUNZ, by and through her attorney, Eugene Steingold,

respectfully moves this Court for an Order quashing her arrest in this cause and

suppressing statements made subsequent to her arrest on September 26, 2007, as well as

an Order holding that the search of her residence was unlawful and invalid, and barring

from evidence tangible objects or other items obtained as a result of the search. In support

thereof defendant states as follows:

### Facts

According to the Fox Lake Police Department reports, on September 24, 2007,

Detective Martin (hereinafter "Martin") was notified by the Northeastern Illinois

Regional Crime Laboratory that they had processed evidence submitted for analysis, and

on the basis of finger print analysis confirmed identification of Mark C. Kozik.  Martin

conducted a background check on Kozik and found that he was living with Heidi L. Kunz

at 7410 Barry Ave. Spring Grove IL 60081. Ms. Kunz had a vehicle registered to her, a

2005 Pontiac 4-door. Martin also obtained Ms. Kunz and Mr. Kozik's SOS images. Copy

of the image retrieval form is attached hereto as "Exhibit A".

On September 25, 2007, Martin performed surveillance on the home but the homeowners never arrived home in the hours he was watching.

On September 26, 2007, at approximately 7 p.m., Martin along with Officer Ostertag ("Ostertag") again performed surveillance on the home. They observed a 4-door Pontiac in the driveway. According to Martin:

"With enough probable cause to question Mr. Kozik and Ms. Kunz. Sgt. Hoyne, Ofc. Baldowsky and Ofc. Daly along with Ofc. Ostertag and myself went to 7410 Barry Ave. Spring Grove IL 60081. Ofc. Ostertag and me went to the front door and knocked. A male matching, the photo of Mr. Kozik answered the door. I told him my name and asked him if he was Mark Kozik. He stated, yes. I asked him to step outside…. At this time Ofc. Baldowsky transported Kozik to the Fox Lake Police Department."

Again, according to Martin:

"I then spoke with a white female who was in the home. She was identified as Heidi L. Kunz. I asked her if she lived in the home. She stated," Yes." I asked her what her relationship with Mr. Kozik was. She stated, "He is my husband." At this time I read Ms. Kunz her Miranda rights. I asked her if she understood them. She stated, "Yes." I told her the reason why we were at her home was for an armed robbery, which occurred in Fox Lake on 8-7-07 in the afternoon. I asked her if she knew anything about the robbery. She looked down and said, "No." I asked her if she or her husband owned a gun? She stated, "No." I asked her if she would give consent for the Fox Lake Police department to search her residence, car and garage. She stated, "Yes you may, I have nothing to hide."  I asked her if there were any safes, doors or place in her home which only her husband Mark had access to. She stated, "No." I showed her the consent to search form and she read it and signed the preprinted form. Ms. Kunz sat in the living room of the home while Sgt. Hoyne and Ofc. Ostertag searched the home."

However, defendant Kunz ("Kunz"), in her Affidavit, (attached hereto as "Exhibit "B"), paints a somewhat different picture of events. According to Kunz, at approximately 7:00 p.m., while she was in the bathroom, she heard pounding on the door. As she opened the door and came out to the porch, she observed that Mark Kozik was handcuffed, and that there were four or more police officers present, at least one in uniform. She was told by these officers to bring his wallet, keys and shoes. She then placed her dog in the

bathroom and returned with Kozik's personal belongings. At this point, three officers entered the premises. Officer Ostertag proceeded to search the house while Detective Martin and Officer Daly stayed with her. Detective Martin told her that they wanted to talk to her; that she had "a right to remain silent" and that "anything I say can be used against me in court"; they then announced that they were police officers. She was not asked for permission nor did she give consent to conduct the search of the house. While Ostertag searched the house, both Martin and Daly kept telling her  "we know you did it" and continued yelling at her. After the search of the house was completed Detective Martin asked her for permission to search the garage—she asked if he had a search warrant. Detective Martin stated that he did not, but could get the warrant because it was a mere formality. Officers then proceeded with the search.

At approximately 8:45 p.m., Kunz, while still at her residence was told to sign a Fox Lake Police Department Miranda Warning form. While each "warning" has a space for initials, to signify person's understanding of each "right", no initials appear on the form. (Copy of the form is attached hereto as "Exhibit "C").

Kunz was then transported to Fox Lake Police Department, and told to sign a "Permission to Search" form. This form was signed at approximately 9:00 p.m. at the Fox Lake Police Department. Copy of the form is attached hereto as "Exhibit "D".

While at the station, Martin and Ostertag continued interrogation of Kunz. At some point Detective Martin told her that if she cooperates, she would not be charged and she would not need an attorney because she will be released. During the interrogation Detective Martin kept emphasizing that police identified Kozik's fingerprints and that Kunz, matched the description of the driver of the getaway car. At approximately 11:25

p.m., Kunz was given a laptop computer by Detective Martin and told to type out a statement.

**Argument**

**A.    Fourth Amendment Issues**

**1.    Kunz's detention in her home without a warrant or probable cause amounted to a seizure.**

In <u>United States v. Jerez</u>, 108 F.3d 684, 689 (7th Cir. 1997), Milwaukee County police officers observed a car with Florida plates in a motel parking lot. They ultimately entered and searched the motel room of the owner of the car. In <u>Jerez</u> appellate court noted at 689:

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Of course, not all police encounters with the citizenry are Fourth Amendment seizures. In <u>Terry v. Ohio</u>, the Supreme Court noted, "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The appellants claim that the officers' knocking on their motel room's door and window and shining a flashlight through the room's window amounted to such a restraint on their liberty.

The Supreme Court has formulated two approaches for determining whether a person has been "seized" within the meaning of the Fourth Amendment. The first of these approaches is employed when the police approach an individual in a place such as an airport, train terminal or on the street. As a general matter, law enforcement officers may approach a willing individual in a public place and ask that person questions without violating the Fourth Amendment. <u>Florida v. Royer</u>, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (plurality opinion); <u>United States v. Notorianni</u>, 729 F.2d 520, 522 (7th Cir. 1984). In these situations, a "seizure" of the person occurs only if a reasonable person in similar circumstances would not have felt "free to leave."    <u>Michigan v. Chestnut</u>, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 108 S. Ct. 1975 (1988) (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980) (opinion of Stewart, J.)); <u>United States v. Boden</u>, 854 F.2d 983, 991 (7th Cir. 1988).

The second approach articulated by the Supreme Court applies when the police approach an individual in a confined space such as a bus. In such a situation, it no longer "makes sense to inquire whether a reasonable person would feel free to continue

walking." <u>Florida v. Bostick</u>, 501 U.S. 429, 435, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991). Because a person on a bus or in an otherwise confining space "has no desire to leave" and would wish to remain even if police were not present, "the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter." Id. at 435-36. When a person's "freedom of movement [is] restricted by a factor independent of police conduct--i. e., by his being a passenger on a bus . . ., the appropriate inquiry is whether a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter." Id. at 436; <u>Chesternut</u>, 486 U.S. at 576 (seizure occurred if "respondent could reasonably have believed that he was not free to disregard the police presence and go about his business").

This second formulation is the appropriate analytical approach in this case. Mr. Jerez' and Mr. Solis' movements were confined as a natural result of their voluntary decision to stay in the motel. It was the middle of the night and at least one of them was clad only in his underwear. As a practical matter, they could not have expressed their desire to terminate the encounter with the police by leaving the scene. Like the person seated on the bus in <u>Bostick</u>, a person staying in a motel room has no desire to leave and would remain whether police were present or not. Mr. Jerez and Mr. Solis, therefore, were "seized" within the meaning of the Fourth Amendment if a reasonable person would not have felt free to decline Deputies Hurrle's and Lent's requests to open the door or to otherwise ignore the deputies' presence. The test, as with the "free to leave" formulation, is an objective one and requires a contextual approach. <u>United States v. Rodriguez</u>, 69 F.3d 136, 141 (7th Cir. 1995); <u>Notorianni</u>, 729 F.2d at 522. The determination of whether an encounter is a seizure is made on the basis of the "totality of the circumstances" surrounding the encounter. <u>Bostick</u>, 501 U.S. at 437; <u>Chesternut</u>, 486 U.S. at 572-73. We hold that, under the totality of the unique circumstances of this case, a Fourth Amendment seizure occurred.

In <u>United States v. Johnson</u>, 427 F.3d 1053 (7th Cir. 2005), police came to

defendant's house to investigate an anonymous tip that large amount of crack was in the

house. Police officers detained Johnson inside the threshold of his house; they then went

inside and searched the house. Appellate court found that Johnson under these

circumstances was seized.

Similarly, here Kunz was in the bathroom when she heard pounding on the door.

She was seized when she came to the door and opened it and police officers went inside.

She could not leave, nor was she given an option to close the door and send the officers

away.

**2.    Kunz did not consent to the search of her house.**

It is well settled under the Fourth and Fourteenth Amendments that warrantless searches are per se unreasonable subject only to a few specifically established and well-delineated exceptions. One of the specifically established exceptions to the Fourth and Fourteenth Amendments' requirement for a warrant issued upon probable cause is a search that is conducted pursuant to voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d. 854 (1973). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Schneckloth, 412 U.S. at 248-49. Factors to be considered in determining voluntariness include (1) the age, education and intelligence of the defendant; (2) whether defendant was advised of his constitutional rights; (3) the length of [any] detention prior to consent; (4) whether defendant consented immediately or police made repeated requests for consent; (5) whether physical coercion was used; [and] (6) whether defendant was in custody.

There is an issue here as to if and whether consent to search was given by Kunz. According to her, she was never fully explained or advised of her rights and was not even asked for permission to search until after the house was searched and officers proceeded to search the garage. In fact, the "Permission to Search" form was not signed until 9 p.m., some two hours after police arrived at her house, and after Kunz was transported to Fox Lake police station.

As noted in <u>Jerez</u> at 694, "[A] consent to search following an illegal seizure is valid only if the evidence uncovered during the consent search has been come upon "by means sufficiently distinguishable to be purged of the primary taint."

In <u>United States v. Johnson</u>, 427 F.3d 1053 (7th Cir. 2005), police came to defendant's house to investigate an anonymous tip that large amount of crack was in the house. Police officers detained Johnson inside the threshold of his house; they then went inside and searched the house. Again, the appellate court noted at 1056 that "consent given during an illegal detention is presumptively invalid, (citation omitted) and any evidence discovered in a subsequent search is inadmissible unless the taint of the illegal conduct is somehow dissipated…"

Here, there were no intervening circumstances: Kunz did not read the consent to search form, no one read it to her, and the officers did not advise her that she had the right to say no to the search without a warrant until later in the evening, after the search was completed. The officers' conduct was enough to intimidate Kunz and to have a causal effect on her subsequent conduct. Especially after her husband was handcuffed and taken away, while she remained in the house surrounded by police officers for several hours. Therefore, the illegal seizure in this case vitiated any subsequent consent that Kunz may have given.

**3.     Officers did not have specific and articulable facts sufficient to give rise to a reasonable suspicion that Kunz has committed or is committing a crime.**

As noted in <u>Johnson</u> at 1057, after finding that Johnson was seized, the next step is to "decide whether the detectives had a reasonable suspicion that Johnson had been, or

was about to be, engaged in criminal activity. (citations omitted). Absent such reasonable suspicion any seizure—wherever effectuated—would have been unlawful."

Martin knew that Kunz resided in the same house as Kozik, who was allegedly identified through a fingerprint analysis as a suspect in National City Bank robbery. In a prior incident report prepared by Lt. Norris of Fox Lake Police Department on August 7, 2007, there was a reference to a witness who allegedly saw a silver two-door car driven by a heavy-set dark skinned woman, approximately 40—45 years old, with facial hair above upper lip. Image retrieval photo (Exhibit A) shows a 30-year-old white female without facial hair. The fact that she resided with Kozik and had a car registered in her name at that location does not amount to reasonable suspicion that Kunz was involved in National City Bank robbery. Therefore her seizure was illegal.

**B.    Fifth Amendment Issues:**

**1.    Kunz was seized in her home without probable cause and interrogated without being fully advised of her rights.**

The officers acted without probable cause and without a warrant for Kunz's arrest, in violation of the United States Constitution. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 2d 639 (1980). There were no exigent circumstances; yet, the agents did not obtain a search warrant for the premises, despite having had ample time to do so.

Before law enforcement officials may question a suspect in custody, the officials must inform the suspect that he has a right to remain silent, that his statements may be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning. Miranda

v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Cases are legion in holding that a valid waiver of Miranda rights must be voluntary, knowing and intelligent. The prosecution must prove, in addition to formal compliance with Miranda, that any incriminating statement obtained from the defendant was given voluntarily. When law enforcement agents use psychological pressure to break down the will of an accused, all statements elicited thereby are deemed involuntary.

The Seventh Circuit has held that "[a] confession is voluntary if in light of the totality of the circumstances, it was not secured through psychological and physical intimidation but rather was the product of a rational intellect and a free will." United States v. Charles, 476 F.3d 492,497 (7th Cir. 2007). "The government bears the burden of proving voluntariness by a preponderance of the evidence." United States v. Taylor, 31 F.3d 459, 463 (7th Cir. 1994). An incriminating statement is deemed involuntary only "if circumstances 'demonstrate that police coercion or overreaching overbore the accused's will and caused the confession.'" Id. (citations omitted). "[C]oercive police activity is a 'necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.'" United States v. Gillaum, 372 F.3d 848, 856-57 (7th Cir. 2004). The inquiry focuses on the defendant's mental state and the behavior of the agents at the time of the interview. Indeed, "[t]he test for a voluntary confession is 'whether the defendant's will was overborne at the time he confessed.'" United States v. McGuire, 957 F.2d 310, 315 (7th Cir. 1992). Thus, courts consider several factors in determining whether a confession was voluntary, including:

1.  whether the defendant was read his Miranda rights;
2.  the defendant's age;
3.  the defendant's intelligence;

4. the defendant's mental state;
5. the duration and nature of the questioning;
6. whether the defendant was punished physically, including deprivation of food or sleep;
7. the length of the defendant's detention; and
8. the defendant's familiarity with the criminal justice system.

At the time her interrogation began Kunz was not fully advised of her <u>Miranda</u> rights and she did not give a knowing and voluntary waiver of said rights. Her husband was handcuffed and taken away without explanation. Her movements were restricted. She had no prior exposure to the criminal justice system. She was continuously questioned for approximately 2 hours at home and another 2 hours at the station. She was not given an opportunity to make a phone call during that time. Even when Kunz was presented with the "Miranda Warning" form she was not explained the meaning of each right, which can be seen from the absence of initials.

### Request for Evidentiary Hearing

A defendant objecting to the admission of evidence obtained as a result of an illegal search and a resulting admission is entitled to a fair hearing in which the underlying factual issues are actually and reliably determined. <u>Jackson v. Denno</u>, 378 U.S. 368, 380 (1964). The allegations in this motion are specific, detailed, definite, nonconjectural, material and disputed by the government. Thus, the defendant has met his burden of making a prima facie showing of illegality, <u>United States v. Randle</u>, 966 F.2d 1209, 1212 (7th Cir. 1992). Without an evidentiary hearing to consider credibility and demeanor, the court cannot properly resolve the disputed issues here. <u>United States v. Madoch</u>, 149 F.3d 596, 600-601 (7th Cir. 1998).

WHEREFORE, for the foregoing reasons, defendant, Heidi Kunz, respectfully requests that this Court set a date certain for an evidentiary hearing on the her motion to

suppress evidence or, in the alternative, to suppress all evidence and statements made by the defendant to any law enforcement officer and all evidence seized as a result of the search of the defendant's residence.

Heidi Kunz's Affidavit and letter are attached hereto as Exhibits.

Respectfully submitted,
HEIDI KUNZ,

/s/ Eugene Steingold
By:_____
Eugene Steingold.


CERTIFICATE OF SERVICE


The undersigned Attorney hereby certifies that in accordance with Fed. R. Grim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF)

DEFENDANT KUNZ'S MOTION TO SUPPRESS STATEMENTS

was served pursuant to the District Court's ECF system as to ECF filers, if any, and was sent by first-class -mail on July 14, 2008 to the following:

Heidi Kunz

Respectfully submitted,

s/Eugene Steingold
Attorney for Defendant Heidi Kunz
111 West Washington Street
Suite 1051
Chicago IL 60602
(312) 726-1060